UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA RAMIREZ, et al.,

    Plaintiff,

v.                                                          CASE NO.: 8:10-cv-1819-T-23TBM
                                                           (CONSOLIDATED)

HILLSBOROUGH COUNTY
SHERIFF'S OFFICE, CITY OF TAMPA,
MATTHEW ZALANSKY, and
WILLIAM GERGEL,

    Defendants.
_____/

**ORDER**

    The plaintiffs file a third amended complaint (Doc. 55) as permitted by a December 14, 2010, order.  The defendants Matthew Zalansky, the "Hillsborough County Sheriff's Office" (the "Sheriff"), and William Gergel move (Docs. 57, 58, 59) to dismiss, and the plaintiffs respond (Docs. 61, 63, 64) in opposition.  Additionally, the plaintiffs move (Doc. 67) for leave to file a fourth amended complaint.

<u>An Action Against "the Sheriff's Office"?</u>

    Among the first thoughts of a prudent counsel contemplating the filing of a lawsuit is the question "Whom should I sue?"  In other words, due diligence implies acquiring the precise identity of the prospective defendant (e.g., the legally correct and precise name rather than a casual and common designation—Thomas rather than Tom, Elizabeth rather than Lizzy, even though in everyday, casual usage "everyone" says "Tom" and "Lizzy" and "no one" says Thomas or Elizabeth) and the precise legal status of the prospective defendant (a corporation, a partnership, a joint venture, a minor, a

soldier, or, more to the point, an officer or agent of a particular unit of government). Different classifications of defendants are identified, sued, and served in distinct manner—a set of distinctions the observance of which is important to the successful and efficient practice of law.  An attorney who overlooks the importance of this distinction often unnecessarily triggers the expenditure of resources, both private and public, necessary to compensate for counsel's insouciance.  The second and third amended complaints in this action name as a defendant "the Hillsborough County Sheriff's Office" (the first iteration of the complaint named "Hillsborough County" as the pertinent defendant, although opposing counsel quickly directed the pleader's attention to the untenable naming of that defendant in the circumstances of this case).  Although the correct name and status of a county sheriff in Florida is readily available and frequently utilized, here it is again.

Article VIII, Section 1(c), of the Florida Constitution, entitled "County Officers," states that "[t]here shall be elected by the electors of each county, for terms of four years, a sheriff . . . ."  Article V, Section 3(b)(3), of the Florida Constitution, which describes the jurisdiction of the Supreme Court of Florida, states that the Supreme Court of Florida "may review any decision of a district court of appeal that . . . expressly affects a class of constitutional or state officers . . . ."  See also Fla. R. App. P. 9.030(a)(2)(A)(3).  In other words, the Florida Constitution creates within each county a sheriff and describes the sheriff, quite properly, as a "constitutional officer" of Florida. Section 768.28(9), Florida Statutes, describes as the "exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers" an action against

- 2 -

"the constitutional officer of which the officer, employee, or agent is an employee . . . ." Thus, Hillsborough County Sheriff David Gee—and not the "Hillsborough County Sheriff's Office"— is the proper party to an action against the Sheriff. Keck v. Seminole County Sheriff's Office, 2010 WL 2822011, *1 (M.D. Fla. 2010) (Presnell, J.) ("As a threshold matter, Plaintiff's claims against the 'Seminole County Sheriff's Office' are improper inasmuch as the Sheriff's Office is not sui juris and cannot be sued.") (citing cases); Levin v. Sarasota County Sheriff's Office, 2006 WL 2037151, *2 (M.D. Fla. 2006) (Bucklew, J.) (dismissing the "Sarasota County Sheriff's Office" as an improper party under Florida law).

The Sheriff, a human being and not an "office," is properly sued in his own name but in his official capacity. Accordingly, the conclusion of this order directs the plaintiffs to correctly identify the Sheriff in an amended complaint and to omit the "Hillsborough County Sheriff's Office".

### Allegations of the Third Amended Complaint

Both Zalansky and Gergel work as a law enforcement officer—Zalansky for the City of Tampa (the "City") and Gergel for the Sheriff. On August 20, 2006, each plaintiff attended a gathering at the Caribbean Club, in Tampa, Florida. During the gathering, law enforcement arrived and arrested everyone in attendance. An assistant state attorney charged each plaintiff with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO")[1] for allegedly participating in a meeting of the "Latin Kings," a criminal organization. The state court later dismissed the charge against each plaintiff.

---

[1] 18 U.S.C. §§ 1961-68.

The arrests followed an investigation by the joint task force "Operation Down Crown," which formed in November, 2005, after Luis Danny Agosto, a convicted felon with a history of violent crime (and with a pending felony charge), agreed to co-operate as a confidential informant against the Latin Kings.  Because of his agreeing to co-operate, Agosto received an opportunity to plead to a lesser charge.  While in prison, Agosto called Zalansky and informed Zalansky that, upon release from prison, Agosto anticipated election as the "third" (also known as the "enforcer") for the Latin Kings.  Agosto told Zalansky that, as the enforcer, Agosto could organize and forcibly procure attendance at a Latin Kings meeting.  Upon Agosto's release, Agosto (1) received from the Federal Bureau of Investigation (the "FBI") a cellular telephone with constant FBI monitoring and (2) signed a co-operation agreement with the FBI.  Neither the FBI, nor the City, nor Zalansky informed Agosto of the proper method of dealing with a potential "target."  Rather, the only instruction that Agosto received consisted of organizing current and former members of the Latin Kings, along with the members' drugs and guns.

"Local" activity by the Latin Kings diminished in August, 2005.  The FBI, the City, Zalansky, and later, the Sheriff and Gergel, sought (through Agosto) to convene the remaining and former members of the organization.  With the defendants' knowledge, Agosto organized meetings and threatened with bodily injury anyone who refused to attend a meeting.  Agosto threatened to "strip" (i.e., beat for three minutes) any person who failed to "report" to a Latin Kings meeting.  The defendants videotaped several of the meetings at which Agosto issued threats.  Because of Agosto's threats, many of the plaintiffs attended Agosto's meetings, during which no discussion of criminal activity

occurred.  Agosto also possessed a firearm and engaged in "contraband sales" with the support and surveillance of Gergel and the Sheriff.  Despite Agosto's committing throughout the investigation several crimes—including theft, distribution of both cocaine and counterfeit money, assault, and driving with a suspended license—Agosto continued to serve as the defendants' informant.

In March, 2006, the FBI officially terminated Agosto as an informant for the FBI.  Despite (1) the City's and Zalansky's knowing the reason for Agosto's termination and (2) the City's "standard operating procedure" that instructs an officer to "ensure that an informant has never been used and terminated for unreliability," the City retained Agosto as the City's informant.  To obtain approval of Agosto's employment with the City, Zalansky included false information on the City's agreement with Agosto.

In August, 2006, Agosto arranged upon the defendants' request a "universal" meeting of the Latin Kings at the Caribbean Club.  The defendants intended to arrest every person who attended the "universal," which Agosto scheduled for August 20, 2006.  (Before the meeting, Zalansky and Gergel rented the venue and applied to a magistrate judge for a wiretap and a search warrant in order to facilitate both recording the meeting and searching the building after the "raid."  Zalansky and Gergel intentionally failed to disclose to the magistrate judge both that Agosto had engaged in criminal activity and threats and that the FBI had terminated Agosto.)  On the day of the meeting, Agosto instructed two people to guard the door.  Although no discussion of criminal activity occurred during the meeting, the defendants (at approximately 3:22 p.m.) entered the meeting and arrested everyone.

The plaintiffs allege (1) that the defendants had an "unofficial custom and practice of disregarding agency policies . . . when they felt such violation justified their 'investigation'"; (2) that the defendants' "final policymakers" "approved, consented and/or ratified" the custom and practice; (3) that the defendants allowed Agosto to threaten the plaintiffs, "most of whom did not exhibit any inclination or desire to become active with the Latin Kings"; (4) that the defendants knew in advance that a person attending a meeting would receive a beating but failed to intervene; (5) that the defendants "knew or should have known that probable cause did not exist to justify the [p]laintiffs' arrests"; (6) that each of the defendants "played a significant role in the determination of the alleged 'probable cause' used to justify the arrests"; and (7) that both the City and the Sheriff inadequately trained and supervised employees.

In this action, the plaintiffs assert (1) claims (counts one and eight) against the Sheriff of false arrest and, under 42 U.S.C. § 1983 ("Section 1983"), of violating the Fourth Amendment; (2) claims (counts two, five, and nine) against Gergel of false arrest, malicious prosecution, and violating the Fourth Amendment; (3) claims (counts three and ten) against the City of false arrest and of violating the Fourth Amendment; and (4) claims (counts four, six, and eleven) against Zalansky of false arrest, malicious prosecution, and violating the Fourth Amendment.

Discussion

*1. The Sheriff's Motion to Dismiss*

The Sheriff asserts (1) that the applicable limitation bars both the false arrest and Section 1983 claims and (2) that the plaintiffs fail to state a claim under Section 1983. The plaintiffs respond (1) that the claim of false arrest accrued on September 11, 2006,

the day of the initial charging document and not on August 20, 2006, the day of the plaintiffs' arrest; (2) that, even if the claim accrued on August 20, 2006, the claim in the first amended complaint "relates back" to the original complaint (filed on August 13, 2010); and (3) that the plaintiffs state a claim under Section 1983.

1. Statute of Limitations

A claim for false arrest accrues on the day of a plaintiff's arrest. City of Miami v. Brooks, 70 So. 2d 306, 307-09 (Fla. 1954); Diaz v. Metro-Dade Police Dep't, 557 So. 2d 608, 609 (Fla. 3d DCA 1990); Leatherwood v. City of Key West, 347 So. 2d 441, 442 (Fla. 3d DCA 1977); Gordon v. City of Belle Glade, 132 So. 2d 449 (Fla. 2d DCA 1961). A plaintiff must assert a false arrest claim no later than four years after accrual. Fla. Stat. § 95.11(3)(o). The four-year limitation in Section 95.11(3), Florida Statutes, applies also to a claim under Section 1983. See Lewis v. Barnick, 385 F. App'x 930, 931 (11th Cir. 2010); Baker v. Gulf & Western Indus., Inc., 850 F.2d 1480, 1482 (11th Cir. 1988). Therefore, in this instance, the pertinent limitation barred the false arrest claim on August 20, 2010, four years after August 20, 2006.

On August 13, 2010, the plaintiffs a complaint that asserts two claims against "Hillsborough County." On August 30, 2010, after realizing that "Hillsborough County" was an improper party, the plaintiffs filed an amended complaint that contains two claims against the Sheriff. The Sheriff argues (1) that Section 95.051, Florida Statutes, precludes tolling of the applicable limitation; (2) that neither excusable neglect nor mistake permits tolling; (3) that the amended complaint cannot "relate back" to the original complaint; (4) that the Sheriff and the County are separate and distinct entities; and (5) that a lawsuit against the County fails to constitute a lawsuit against the Sheriff.

In response, the plaintiffs argue that, under the Federal Rules of Civil Procedure, each claim in the amended complaint "relates back" to the original complaint.

Under Rule 15(c)(1), Federal Rules of Civil Procedure, an amended pleading "relates back" to the date of the original pleading if:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m)[2] for serving the summons and complaint, the party to be brought in by amendment:
>
>   (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>   (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

"[R]elation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." Krupski v. Costa Crociere S. p. A., 130 S. Ct. 2485, 2490 (2010). As Krupski explains:

> A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

130 S. Ct. at 2494.

---

[2] Rule 4(m) permits a plaintiff to serve a defendant within a hundred and twenty days after filing a complaint.

In this instance, the amended complaint omits "Hillsborough County" and adds "Hillsborough County Sheriff's Office." As the Sheriff correctly asserts, Hillsborough County is an entity separate and legally distinct from the Sheriff. Nonetheless, the amended complaint asserts the same claims, arising from the same transaction or occurrence as the original complaint. The Sheriff received service of the amended complaint in accord with Rule 4(m) within a hundred and twenty days of the plaintiffs' filing the complaint. Thus, as described in Rule 15(c)(1)(C)(i), the Sheriff received notice of this action and suffered no prejudice in defending on the merits.

Additionally, the original complaint (Doc. 1) names as a defendant Gergel, a Hillsborough County deputy sheriff. The complaint also identifies (albeit not as a party) the "Hillsborough County Sheriff's Office" and describes (albeit incorrectly) the "Hillsborough County Sheriff's Office" as "a law enforcement agency for the [d]efendant, Hillsborough County." The complaint derives from the conduct of a joint task force comprised of the FBI, the Sheriff, and the City. Thus, the Sheriff undoubtedly possessed either actual or constructive knowledge that the plaintiffs would have timely asserted this action against the Sheriff but for the plaintiffs' mistake.

Accordingly, under Rule 15(c), the amended complaint (Doc. 5) asserts within the four-year limitation a claim against the Sheriff.

### 2. Section 1983 Claim—Municipal Liability

"Respondeat superior imputes to a county sheriff no liability under Section 1983 for injury caused by the sheriff's employees." Greer v. Hillsborough County Sheriff's Office, 2006 WL 2535050, *3 (M.D. Fla. 2006) (citing Monell v. Dep't of Social Serv., 436 U.S. 658, 691 (1978) (finding that "a local government may not be sued under

§ 1983 for an injury inflicted solely by its employees or agents"); McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir.2004); and Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir.2003)); Barr v. Gee, 2010 WL 3002875, *3 (M.D. Fla. 2010).  Only a municipality's maintaining an unconstitutional custom or policy creates municipal liability.  Monell, 436 U.S. at 690-91, 98.  "Failure to train constitutes a municipal policy if 'the need for more or different training [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that the failure to train amounts to deliberate indifference to a constitutional right."  Ainsworth v. City of Tampa, 2010 WL 996514, *4 (M.D. Fla. 2010) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  However, "a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985).

In the third amended complaint, the plaintiffs allege (1) that the Sheriff "approved, consented and/or ratified the actions of Gergel and [Agosto] during Operation Down Crown"; (2) that the Sheriff maintains a "custom, practice and/or policy of supervising confidential informants and defining 'gang activity,'" which policy caused a constitutional violation; and (3) that the "custom, practice and/or policy of improper supervision of confidential informants and/or allowing for the illegal arrests of persons . . . was ratified, approved, consented to and/or officially sanctioned by the [d]efendant's final policy maker."  In support of each allegation, the plaintiffs assert that the Sheriff (1) knew of the threats and violence used by Agosto, (2) knew or should have known of the crimes

committed by Agosto, and (3) excused and attempted to conceal Agosto's criminal activity.

The Sheriff argues that the complaint contains only vague and conclusory allegations as to the alleged policy, practice, or custom. According to the Sheriff, the complaint establishes that the FBI, the City, and Zalansky executed agreements with and supervised Agosto; that the Sheriff lacked either awareness of or involvement in instructing Agosto; and that the Sheriff reasonably relied on the information provided by the FBI, the City, and Zalansky. In response, the plaintiffs assert (1) that Agosto and Gergel acted as agents of the Sheriff and therefore both Agosto's and Gergel's conduct imputes to the Sheriff; (2) that the plaintiffs repeatedly allege a failure to properly supervise; (3) that the allegations support an inference that the Sheriff "had access to at a bare minimum part of the investigative file of the FBI, [the City][,] and/or Zalansky"; and (4) that, because Agosto engaged in threats and criminal activity while under surveillance by Gergel, the Sheriff could not have reasonably relied on information provided by the FBI, the City, and Zalansky.

In this instance, the plaintiffs (1) attempt improperly to impute to the Sheriff the alleged conduct of both Agosto and Gergel and (2) fail to provide sufficient factual allegations in support of the Section 1983 claim against the Sheriff. Under Monell, the plaintiffs cannot impute the allegedly unconstitutional conduct of either Agosto or Gergel to the Sheriff. Furthermore, the plaintiffs must provide sufficient factual support for the Sheriff's ratifying, approving, or consenting to either unconstitutional conduct by deputy sheriffs, illegal arrests, or criminal activity by confidential informants. The plaintiffs offer no fact to support Sheriff Gee's ratifying or approving either Gergel's or Agosto's

conduct.  Additionally, the allegations that the Sheriff "knew or should have known," "excused," and "attempted to conceal" unconstitutional activity constitute mere conclusions without support in the complaint's factual allegations.[3]  Accordingly, count eight of the third amended complaint merits dismissal.

### 2. *Zalansky's and Gergel's Motions to Dismiss*

Zalansky argues (Doc. 57) that the third amended complaint warrants dismissal (1) because the complaint fails to allege Zalansky's participating in the probable cause determination; (2) because the complaint fails to allege that the search warrant produced evidence useful in prosecuting the plaintiffs; (3) because the wiretap was unnecessary and thus "cannot form a basis for liability"; and (4) because Zalansky receives the protection of qualified immunity.  Gergel (Doc. 59) "adopts and incorporates by reference those arguments and citations set forth by [d]efendant Zalansky . . . ." as to probable cause, the wiretap and search warrant, and qualified immunity.  In response, the plaintiffs assert (1) that the complaint adequately alleges Zalansky's and Gergel's unreasonably detaining and arresting the plaintiffs without probable cause; (2) that the allegations as to the wiretap and search warrant support the claims of false arrest, malicious prosecution, and violation of the Fourth Amendment; and (3) that neither Zalansky nor Gergel receives qualified immunity because both Zalansky and Gergel engaged in intentional, deceptive conduct.

---

[3] See Aisenberg v. Hillsborough County Sheriff's Office, 325 F. Supp. 2d 1366, 1381-82 (M.D. Fla. 2004) (describing "conclusory allegations" and explaining why conclusory allegations without more fail to prevent dismissal under Rule 12(b)(6), Federal Rules of Civil Procedure).

### 1. Qualified Immunity

"Because qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in the litigation.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) and Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curium)).  "'[M]ore than mere conclusory notice pleading is required. . . . [a] complaint will be dismissed as insufficient where the allegations [in the complaint] are vague and conclusory.'" Gonzalez, 325 F.3d at 1235 (quoting Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984)).  The complaint must provide some specificity as to the facts supporting a Section 1983 claim. Ainsworth, 2010 WL 996514 at *2.

"Qualified immunity permits a government official to perform a discretionary duty 'without the fear of personal liability or harassing litigation' and protects from suit 'all but the plainly incompetent.'" Greer, 2006 WL 2535050 at *1 (citing Reno, 325 F.3d at 1233). A "discretionary duty" means conduct that furthers an official obligation and falls within the scope of an official's authority. Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 & n.6 (11th Cir. 2004). If an act occurs within the defendant's "discretionary function," the plaintiff bears the burden of overcoming qualified immunity. See Rushing v. Parker, 2010 WL 918323 (11th Cir. 2010). A complaint (preliminarily accepted as true) defeats qualified immunity by alleging a constitutional violation "clearly established" by existing legal precedent. Pearson v. Callahan, 555 U.S. 223 (2009). "For the law to be 'clearly established,' case law must have earlier developed in such a concrete and factually

defined context to make it obvious to [a] reasonable government actor[] . . . that what [the government actor] is doing violates federal law."  Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

### 2. False Arrest, Malicious Prosecution, and Section 1983

An arrest without probable cause violates the Fourth Amendment, Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003), and supports claims for false arrest and malicious prosecution under both state and federal law.  Johnson v. Weiner, 19 So. 2d 699, 700 (Fla. 1944); see also Grider v. City of Auburn, 618 F.3d 1240, 1256-57 (11th Cir. 2010) (describing as "well established" that "an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment."); Kingsland v. City of Miami, 382 F.3d 1220, 1226, 1234-35 (11th Cir. 2004) (explaining that probable cause defeats a malicious prosecution claim under Section 1983)[4]; Rankin v. Evans, 133 F.3d 1425, 1435-36 (11th Cir. 1998) (stating that "probable cause constitutes an absolute bar to both state and [Section] 1983 claims alleging false arrest.").  The standard for determining probable cause is the same under both state and federal law.  Rankin, 133 F.3d at 1435-36 (describing the standard as "whether 'a reasonable man would have

---

[4] To state a claim under state law for malicious prosecution, the plaintiff must allege:

(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Kingsland, 382 F.3d at 1234 (citing Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002), and Burns v. GCC Beverages, Inc., 502 So. 2d 1217 (Fla. 1986)).

believed [probable cause existed] had he known all of the facts known by the officer.'"); Kingsland, 382 F.3d at 1226.

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Grider, 618 F.3d at 1257. Arguable probable cause exists if "'reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest [p]laintiff.'" 618 F.3d at 1257 & n.25 (quoting Kingsland, 382 F.3d at 1232). As Grider explains:

> Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. Showing arguable probable cause does not, however, require proving every element of a crime. If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply.

618 F.3d at 1257.

In this instance, the complaint alleges that the defendants unlawfully arrested and charged the plaintiffs for participating in a meeting of a criminal organization, the Latin Kings. The defendants arrested the plaintiffs for allegedly violated RICO, which penalizes participation in organized crime and which prohibits a person's receiving income from "racketeering activity"; maintaining an interest in, or control of, an enterprise through racketeering activity; working for, or associating with, an enterprise engaged in racketeering activity; and conspiring to violate RICO's prohibitions. According to the complaint, Zalansky and Gergel continuously monitored as Agosto (1) threatened with bodily injury anyone who refused to attend a Latin Kings meeting and (2) committed crimes. Furthermore, the plaintiffs allege (1) that no discussion of

criminal activity occurred at a meeting, including the August 20, 2006, meeting; (2) that Zalansky approved of Agosto's forcibly procuring (through threats and violence) attendance at the meetings; (3) that Agosto advised Zalansky and Gergel of Agosto's threats and violence; (4) that Zalansky and Gergel monitored a meeting during which a beating occurred; (5) that Zalansky and Gergel intentionally failed to disclose Agosto's threats and violence to the magistrate judge who authorized the wiretap and search warrant; (6) that during the "universal," on August 20, 2006, Zalansky and Gergel "moved in to arrest everyone in attendance"; and (7) that both Zalansky and Gergel "participated in the arrest of each of the [p]laintiffs" and "played a significant role in the determination of the alleged 'probable cause' used to justify the arrests."

Assuming the truth of the plaintiffs' allegations, Zalansky and Gergel possessed neither probable cause nor arguable probable cause to arrest the plaintiffs on August 20, 2006. No discussion of criminal activity occurred at a meeting, and Agosto forcibly procured through threats and violence the plaintiffs' attendance at each meeting. The mere presence of the plaintiffs at the "universal" (without more) cannot justify the plaintiffs' arrests. Based on the facts as alleged in the complaint, no reasonable officer could have believed that probable cause existed to arrest the plaintiffs. Furthermore, (1) the absence of probable cause supports both the false arrest and malicious prosecution claims and (2) the plaintiffs need not show (as Zalansky contends) that the search warrant produced evidence useful in prosecuting the plaintiffs in order to state a claim for malicious prosecution. Accordingly, at this stage of the action, neither Zalansky nor Gergel receives the protection of qualified immunity, and the plaintiffs

sufficiently state a claim for false arrest, malicious prosecution, and a violation of the Fourth Amendment.

## Conclusion

The motions (Docs. 57, 59) to dismiss by Zalansky and Gergel are **DENIED**. The motion (Doc. 58) to dismiss by the Sheriff is **GRANTED IN PART** as to count eight (the Section 1983 claim), and count eight is **DISMISSED**. The motion (Doc. 58) is otherwise **DENIED**. The plaintiffs' motion (Doc. 67) for leave to amend is **GRANTED**, and the plaintiffs may file a fourth amended complaint (correctly identifying the Sheriff and removing the "Hillsborough County Sheriff's Office" as a defendant to this action) no later than **March 25, 2011**. Furthermore, the stay (Doc. 50) on discovery is **VACATED**. The parties shall promptly confer in accord with Local Rule 3.05 and file an amended case management report no later than **April 1, 2011**.

ORDERED in Tampa, Florida, on March 18, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE