UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA RAMIREZ, et al.,

    Plaintiff,

v.

CITY OF TAMPA, MATTHEW ZALANSKY,
WILLIAM GERGEL, DANIEL WEIRZBICKI,
WILLIAM SLAVINSKI, and DAVID GEE, in
his official capacity as the Hillsborough
County Sheriff,

    Defendants.

_____/

CASE NO.: 8:10-cv-1819-T-23TBM
(CONSOLIDATED)

**ORDER**

    A March 18, 2011, order (Doc. 68) (1) denies Matthew Zalansky's and William Gergel's motions to dismiss, (2) grants in part and denies in part the Hillsborough County Sheriff's motion to dismiss, and (3) grants leave to file a fourth amended complaint.  The plaintiffs file a fourth amended complaint (Doc. 70) and assert (for the first time) a claim against Daniel Wierzbicki and William Slavinski, special agents for the Federal Bureau of Investigation (the "FBI").  Wierzbicki and Slavinski move (Doc. 94) to dismiss and argue (1) that the applicable limitation bars the plaintiffs' claims and (2) that both Wierzbicki and Slavinski receive the protection of qualified immunity.  The plaintiffs respond (Doc. 97) in opposition.

Background

    Both Wierzbicki and Slavinski work as a special agent for the FBI.  Beginning in November, 2005, the FBI collaborated with local law enforcement in the joint task force known as "Operation Down Crown" in Tampa, Florida.   The task force relied on Luis

Danny Agosto, a convicted felon with a history of violent crime, as a confidential informant against the "Latin Kings" criminal organization.  The FBI formally retained Agosto in 2005 and terminated Agosto in March, 2006.  The City of Tampa retained Agosto shortly thereafter.  At the direction of the task force, Agosto organized on August 20, 2006, a gathering (a "Universal") during which local law enforcement arrived and arrested everyone in attendance.  An assistant state attorney charged each attendee with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO")[1] for allegedly participating in a meeting of the Latin Kings.  In April, 2008, twenty-three of the attendees procured a dismissal of the charges.

Twelve of the twenty-three sue for a violation of both state and federal law.  Each of the twelve plaintiffs filed a separate action against the City of Tampa, the FBI, Gergel, Zalanski, and "Hillsborough County".  On August 30, 2010, each plaintiff filed an amended complaint that names the "Hillsborough County Sheriff's Office" as a defendant in place of "Hillsborough County".  Because each of the twelve actions involves the same defendants, the same claims, the same criminal investigation, and common issues of law and fact, an October 1, 2010, order (Doc. 15) consolidates the actions.  On October 18, 2010, the plaintiffs filed with leave a second amended complaint.  The defendants moved (Docs. 32, 33, 34, 35, 36, 37, 38) to dismiss, for a more definite statement, and to strike.  In response to the FBI's motion, the plaintiffs conceded (Doc. 49), that "they have not filed a Bivens[2] claim against Wierzbicki and Slavinski but will be seeking leave to amend to do so."  A December 14, 2010, order

---

[1] 18 U.S.C. §§ 1961-68.

[2] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

(Doc. 51) grants the motions for a more definite statement, grants the motions to strike,

denies as moot the motions to dismiss, and permits the plaintiffs to file a third amended

complaint.  (The third amended complaint (Doc. 54) fails to name either Wierzbicki or

Slavinski as a defendant.)  The FBI again moved (Docs. 56) to dismiss.[3]  In response to

the FBI's motion, the plaintiffs stipulated (Doc. 62) to dismissal.  A March 18, 2011,

order (Doc. 68) grants in part and denies in part the remaining motions and grants the

plaintiffs leave to file a fourth amended complaint.  In the fourth amended complaint

(Doc. 70), the plaintiffs assert a claim against Wierzbicki and Slavinski.

In the fourth amended complaint, the plaintiffs allege that Wierzbicki and Slavinski

(the "agents") (1) "participated in the raid" of the Universal; (2) acted in concert with

local law enforcement and "moved in to arrest everyone in attendance"; (3) "rented the

venue" for the Universal; (4) "intentionally failed to disclose to the neutral magistrate"

(who authorized a wire tap) that Agosto engaged in criminal activity while working as a

confidential informant and that the FBI terminated Agosto as a confidential informant;

(5) "knew or should have known that probable cause did not exist to justify the

[p]laintiffs' arrests"; (6) "acted with bad faith and/or malice by arresting the [p]laintiffs

with no probable cause"; (7) "worked together" with local law enforcement "in the

prosecution of the [p]laintiffs in [s]tate court"; (8) "[t]hroughout the prosecution . . .

picked and chose what information to provide to the Hillsborough County State

Attorney's Office for the prosecution of the [p]laintiffs"; and (9) "repeatedly failed [after

the plaintiffs' arrest] to report probation violations [by] [Agosto]" in order to protect

Agosto.  The plaintiffs assert a Bivens claim against each agent and repeat the

_____

[3] The City of Tampa answered (Doc. 60) the third amended complaint.

- 3 -

allegations as to the lack of probable cause for the arrest.  Additionally, the plaintiffs

allege (1) that the agents violated the plaintiffs' Fourth Amendment right when the

agents "unlawfully arrested" the plaintiffs; (2) that the agents' conduct—including the

"illegal arrest" of the plaintiffs, the "failure to properly supervise" Agosto, and the "failure

to provide complete and accurate details of [the] investigation"—caused the state

attorney to prosecute the plaintiffs; (3) that each agent "exhibited malice in its actions of

formally prosecuting [p]laintiffs for . . . RICO"; (4) that the agents' "custom, practice

and/or policy of supervising confidential informants and defining 'gang activity' is directly

liable in causing the [p]laintiffs to be unreasonably arrested, formally charged and

prosecuted for, including but not limited to, RICO and [c]onspiracy to [c]ommit RICO";

and (5) that each agent's "actions of withholding evidence caused the continued

prosecution of [p]laintiffs".

In moving to dismiss, the agents argue that no federal official arrested, detained,

or formally prosecuted the plaintiffs.  The agents describe the fourth amended complaint

as "largely a cut[-]and[-]paste job with the names of various defendants substituted in

each count".[4]  Treating the Bivens claim as a false arrest claim under the Fourth

Amendment, the agents argue that the claim is barred both by the applicable limitation

and by the agents' qualified immunity.[5]  In response, the plaintiffs concede[6] that the

---

[4] The agents add that "as a professional courtesy" the agents notified the plaintiffs of the complaint's deficiency and "Rule 11 violations".  Although the agents request no sanction under Rule 11, the agents note the court's power to sanction sua sponte.

[5] Section 1983 precedent applies in a Bivens action.  Abella v. Rubino, 63 F3d 1063, 1065 (11th Cir. 1995).

[6] The plaintiffs concede (Doc. 97) that "if their cause of action was based solely upon false arrest, the statute of limitations would have run four years from the date that the plaintiffs were detained pursuant to legal process."  However, the plaintiffs argue that the malicious prosecution claim accrued when the
(continued...)

- 4 -

applicable limitation bars a false arrest claim but argue that the Bivens claim is "based

upon malicious prosecution" and, therefore, that the claim is both timely and sufficient to

overcome the agents' qualified immunity.

Discussion

*1. Malicious Prosecution*

An arrest without probable cause violates the Fourth Amendment, Durruthy v.

Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003), and supports a claim for malicious

prosecution under both state and federal law.  Johnson v. Weiner, 19 So. 2d 699, 700

(Fla. 1944); see also Grider v. City of Auburn, 618 F.3d 1240, 1256-57 (11th Cir. 2010).

To state a claim for malicious prosecution, the plaintiff must allege:

> (1) an original judicial proceeding against the present plaintiff was
> commenced or continued; (2) the present defendant was the legal
> cause of the original proceeding; (3) the termination of the original
> proceeding constituted a bona fide termination of that proceeding in
> favor of the present plaintiff; (4) there was an absence of probable
> cause for the original proceeding; (5) there was malice on the part of
> the present defendant; and (6) the plaintiff suffered damages as a
> result of the original proceeding.

Kingsland v. City of Miami, 382 F.3d at 1220, 1234 (11th Cir. 2004); Molina v. 0115576

Jiffy Lube Intern., Inc., 345 F. App'x 412, 413 (11th Cir. 2009) ("The failure of a plaintiff

to establish any one of these six elements is fatal to a claim of malicious prosecution.").

"An independent investigation by an officer and an independent decision to prosecute

by the [s]tate [a]ttorney show a lack of legal causation."  Molina, 345 F. App'x at 414

(explaining that an officer who neither knowingly provides a false statement of fact nor

---

[6](...continued)
plaintiffs procured a dismissal of the RICO charge in April, 2008, and, therefore, that the claim falls within
the four-year limitation.  The defendants offer no response to that argument in their reply (Doc. 100).
Upon review, if the claim is construed as a malicious prosecution claim, the claim appears timely.

interferes in the decision to prosecute "is not regarded as having instigated the criminal

action."). An intervening act of the prosecutor breaks the chain of causation as long as

the officer neither improperly influences the prosecutor nor engages in deceptive tactics.

Mobley v. Manahugh, 2009 WL 4562175 (M.D. Fla. 2009) (Covington, J.) (citing cases);

Barts v. Joyner, 865 F.2d 1187, 1195-96 (11th Cir. 1989).

     The plaintiffs' putative Bivens claim fails, even if granted a lenient construction

and even if the occasionally inapposite and arcane allegations are charitably excised.

For example, the Bivens claim alleges that the agents maintained a "custom, practice

and/or policy," even though the maintenance of a custom or policy appears wholly

superfluous to a Bivens claim against a federal agent for malicious prosecution. Also,

the plaintiffs allege that each federal agent "exhibited malice in its actions of formally

prosecuting [p]laintiffs for . . . RICO," even though (by their own allegations) the plaintiffs

assert that the state attorney formally prosecuted the plaintiffs (and even though an FBI

agent's "formally prosecuting" anyone is implausible). Nonetheless, the allegations are

construed as asserting under Bivens a claim for malicious prosecution.

     In this instance, however, the plaintiffs provide only a conclusory and implausible

allegation that the agents "caused" the state attorney to prosecute the plaintiffs. The

plaintiffs allege that each agent maintained a "custom, practice and/or policy" of

"supervising confidential informants and defining 'gang activity,'" which policy "is directly

liable in causing the [p]laintiffs to be unreasonably arrested, formally charged".

However, neither a purported "custom, practice and/or policy" of supervising confidential

informants nor a purported "custom, practice and/or policy" of defining gang activity

supports causation. Rather, the plaintiffs must allege (in good faith and with supporting

facts) that an agent either knowingly provided false information to the prosecutor or otherwise improperly influenced the prosecutor. The fourth amended complaint contains no allegation of fact to that effect. Furthermore, although the plaintiffs allege that the agents failed "to provide complete and accurate details of [the] investigation" to the prosecutor, the agents lack both the duty and opportunity to disclose information generated in an FBI investigation. Rather, the United States Attorney (who receives no mention in the complaint) bears both the duty and opportunity under applicable regulations to disclose information and material for use in a state or federal matter. See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951); 28 C.F.R. § 16.22.[7] In any event, the allegation is a mere conclusion without factual support and entitled to no weight.

### *2. Qualified Immunity*

"Because qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in the litigation.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir.

---

[7] See also In re May 8, 2007 Order to Show Cause Issued in State of Florida v. Samuel Alvarado, et al., Case No. 8:07-cv-850-T-23MAP, Doc. 9. Section 16.22 governs the production of material generated in an FBI investigation and provides, in relevant part, that:

> (a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

> (b) Whenever a demand is made upon an employee or former employee as described in paragraph (a) of this section, the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located. The responsible United States Attorney shall follow procedures set forth in § 16.24 of this part.

2003) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) and <u>Hunter v. Bryant</u>, 502

U.S. 224, 227 (1991) (per curium)).  "'A complaint will be dismissed as insufficient [if]

the allegations [in the complaint] are vague and conclusory.'" <u>Gonzalez</u>, 325 F.3d at

1235 (quoting <u>Fullman v. Graddick</u>, 739 F.2d 553, 556-57 (11th Cir. 1984)).  "Qualified

immunity permits a government official to perform a discretionary duty 'without the fear

of personal liability or harassing litigation' and protects from suit 'all but the plainly

incompetent.'" <u>Greer v. Hillsborough County Sheriff's Office</u>, 2006 WL 2535050, *1

(M.D. Fla. 2006) (citing <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1233 (11th Cir. 2003)).  A

government official performs a "discretionary duty" if the official acts in furtherance of an

official duty and the act falls within the scope of the official's authority.  <u>Harbert Intern.,</u>

<u>Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998); <u>see</u> <u>also</u> <u>Holloman ex rel.</u>

<u>Holloman v. Harland</u>, 370 F.3d 1252, 1263-64 & n.6 (11th Cir. 2004) (stating that, in

order to receive the protection of qualified immunity, "the official must have been

engaged in a 'discretionary function' when he performed the acts of which the plaintiff

complains.").  If a defendant demonstrates that the defendant acted within the

defendant's "discretionary function," the burden shifts to the plaintiff to overcome

qualified immunity.  <u>See</u> <u>Rushing v. Parker</u>, 2010 WL 918323 (11th Cir. 2010).

       To defeat qualified immunity, the factual allegations of the plaintiff's complaint

(preliminarily accepted as true) must state a constitutional violation "clearly established"

by existing legal precedent.  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009).  "For the

law to be 'clearly established,' case law must have earlier developed in such a concrete

and factually defined context to make it obvious to [a] reasonable government actor[]

. . . that what [the government actor] is doing violates federal law."  <u>Priester v. City of</u>

Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).  The plaintiff must allege facts

showing "'an affirmative causal connection'" between the alleged act or omission and

the alleged constitutional violation.  Brown v. City of Huntsville, 608 F.3d 724, 737 (11th

Cir. 2010).

     In this instance, the agents argue (and the plaintiffs appear to concede) that the

agents performed a discretionary duty while participating in the joint task force.

Although an alleged arrest without probable cause violates the Fourth Amendment and

supports a claim for malicious prosecution, a lack of probable cause is insufficient to

state a claim for malicious prosecution.  Among other elements, the plaintiffs must

allege facts showing that the agents were the "legal cause of the [judicial] proceeding"

against the plaintiffs.  As described in the previous section, the fourth amended

complaint contains no plausible allegation that agents Weirzbicki and Slavinski

constituted the legal cause of the state action.  The plaintiffs allege no fact showing the

agents either knowingly provided false information to the state attorney or otherwise

improperly interfered with the decision to prosecute the plaintiffs.  The plaintiffs show no

"affirmative causal connection" between an alleged act or omission of agent Weizbicki

or agent Slavinski and the alleged violation of a Fourth Amendment right.  Therefore,

the plaintiffs fail to overcome the agents' qualified immunity.

<h3 style="text-align:center">Conclusion</h3>

     Accordingly, the defendants' motion (Doc. 94) is **GRANTED**, and counts XI and

XII (Doc. 70) against FBI agents Daniel Weirzbicki and William Slavinski, are

**DISMISSED**.  Although not requesting leave to amend, see Wagner v. Daewoo Heavy

Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to

grant a plaintiff leave to amend his complaint sue sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court"), the plaintiffs may amend with a fifth complaint on or before **July 8, 2011**.

ORDERED in Tampa, Florida, on June 24, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE